Opinion op the Court.
Samuel Caurchill became indebted to Alexander' S. Bullitt, for moneys collected by Churchill belonging to the estate of Eliza Prather, of whom Bullitt was guardian. To secure this money, Churchill executed bis note with personal security. Afterwards, Gwath-mey being indebted to Churchill a sum of money due by anote or notes, Churchill induced Gwathmey to execute his note to Bullitt^ with Breckenridge, the plaintiff in error, as security; which note, Bullitt accepted in discharge of Churchill’s note, and gave it up to. Churchill,, and Churchill gave up to Gwathmey his notes. The note thus accepted by Bullitt, was made payable to him as guardian for his ward, at tbe end of two years, unless she should sooner marry. Bullitt died, and after his death his executors brought suit and recovered judgment against both Gwathmey and Breckenridge, for tbe amount of the note, and to be relieved against this judgment, Breckenridge filed this bill, alleging, that there were large usurious loans of money from Churchill to Gwathmey, which composed the demand of Churchill, for which Gwathmey and Breckenridge had given their note to Bullitt, and that he, Breckenridge, was ignorant of the usury until after the judgment at law was obtained, so that be could not. there plead it. He accordingly prayed a new trial at law, and an injunction against Bullitt’s executors which was granted. He made Bullitt’s executors and Churchill parties, totally omit i.-g Gwathmey. This injunction was afterwards dissolved on the face of the bill. Breckenridge then amended his bill, stating that be had paid the money to Bullitt’s executors, and that they had paid it .to Churchill, who had since becomfc the guardian of Eliza Prather, as part of her estate.
Bullitt’s executors answered, denying any usury on tbe part of their testator, as to the debt due him, and any knowledge of themselves or testator, that there ivas any usury between Gwathmey and Churchill. They admit the receipt of the money from Breckenridge and the payment of it since to Churchill, who had succeed. *5 ed their testator in the guardianship, and contend that there is no equity in the bill.
Usury does not vitiate a note given by the party on whom th® usury was practised to a creditor of the usurer, in disohat-ge of a lawful debt due by such usurer, the creditor having no knowledge of the usury.
A.secnrity in a note, the consideration of which was usurious interest, cannot maintain a bill in equity-in his own namp aldne for relief; the principal must be in some way a party to the suit.
Churchill demurred to the bill, for the want of equity on its face, and because, if there was any complaint against him, it lay in the mouth of Gwathmey alone, and because Gwathmey was not made a party.
Gwathmey’s deposition was taken by Breckenridge, and it proved the usury to a large amount, between himself and Churchill, and at the samé time acquitted Bul-litt of any knowledge or participation in it. This deposition was rejected by the court below on the trial, and a decree rendered dismissing the bill with costs, to reverse which, Breckenridge has prosecuted this writ of error.
1. We can entertain no doubt of the propriety of this decree, as to Bullitt’s executors. The consideration, as to Bullitt, was the money really due to him, with legal interest, as guardian to his ward; although the consideration between Churchill and Gwathmey, was of a different character. The right, therefore, of Bullitt to recover, must be tested by the purity of the consideration given by him, and could not depend upon the vicious transactions between Gwathmey and Chqrchill, to which Bullitt was neither party nor privy, according to the principles recognized by this court, in the case of Morrison vs. Clay, &c. Hardin 421, and in numerous cases since.
2. Nor is there much better ground for relief, in favor of Breckenridge against Churchill. Breckenridge confided in Gwathmey, became his security, and has his recourse against him, and Gwathmey has his recourse against Churchill for any usury. This recovery against Churchill, Breckenridge is nobentitled to, in the attitude in which he stands. We need not now en-quire, whether, if Breckenridge had made G wathmey a party, and had shown his insolvency, he might not, with Gwathmey’s consent, have obtained the decree in his stead, against Churchill, for the usurious interest; for it is clear, he cannot obtain such1 decree in Gwath-mey’s stead, against Churchill, who would be liable again to Gwathmey for the amount, as Churchill could not then plead the decree in favor of Breckenridge in bar against Gwathmey, when Gwathmey was no party to the record. To allow Breckenridge a decree now, against Churchill, would be seizing on Gwathmey’s.
*6 right of suit, or cause of complaint, and decreeing it to< Breckenridge without consulting Gwathmey, and leaving Churchill again to pay the same demand at the suit of Gwathmey. Nor do we conceive, that the circumstance of Churchill’s having since received the money from Bullitt’s executors, as guardian for the same ward, makes any difference. It is as sacred against the demands of Breckenridge, in the hands of Churchill, as guardian, as it was in the hands of Bullitt’s executors; and the circumstance of its having passed into the hands of Churchill, as the legal representative of hi& ward, does not give a stronger title to Breckenridge. On no ground, therefore, is tire plain tiff in error entitled' to relief.
We have not thought it necessary to enquire into and decide upon the admissibility of Gwathmey’s deposition. For if it is rejected, no usury is proved, and if it is admitted, it proves a strong cause of suit or complaint againt .Churchill, in his own behalf; but none iu favor of Breckenridge. It can, therefore, have no important bearing.
The decree must be affirmed with costs.